STATE of Utah, Plaintiff and Appellee,

v.

Dennis P. BATES, Defendant
and Appellant.

No. 21006.

Supreme Court of Utah.

Aug. 11, 1989.

Lynn R. Brown, Salt Lake City, for de-
fendant and appellant.

David L. Wilkinson, Sandra L. Sjogren,
Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant was charged with three
counts of rape of his minor daughter. The
information listed the approximate dates of
the occurrences as December 26, 1983, July
1983, and March 1982. He was bound over
on these charges, and trial was set. Ten
days before trial, he filed a motion to dis-
cover the dates, places, and times of the
incidents charged. The prosecution met

with the victim to fix the dates more precisely. Defendant was notified that the dates in the information would be amended to December 25, 1983, June 18, 1983, and May of 1982 to conform with the best information available. The ten-day requirement for notice of alibi was waived. Utah Code Ann. § 77–14–2(4) (1982). However, no notice of alibi was filed by defendant. An amended information was filed the day of trial, listing the dates as changed.

Defendant moved to dismiss or, in the alternative, for a new preliminary hearing on the new dates alleged, but his motion was denied. The trial court ruled that the incidents charged were the same; only the dates had been changed. At trial, Cindy Rasmussen, a social worker who had counseled the victim, testified for the State and related statements the victim had made in her counseling sessions. She also testified that based on her interview with the victim, the behavior she exhibited, and her accounts of the incidents, the victim had been sexually abused. In discussing the basis of her expert opinion, Rasmussen made the statement, "She expressed a lot of pain and anger that I don't think could have happened if she had not been sexually abused. It was directly related to her experience of having been sexually abused by her father." Defendant objected to this testimony as assessing the credibility of the witness and going to the ultimate issue in the case.

Dr. Barbara Snow also testified for the prosecution as to the victim's account of the incidents as well as to prior incidents of abuse not charged in the information and to an instance where the victim witnessed defendant strike her mother. Following Dr. Snow's testimony, defendant moved for a mistrial based on the admission of her testimony concerning "prior bad acts" of defendant. This motion was denied. Defendant was convicted on two of the three counts of rape.

## I.

■ Defendant first contends that the court erred in not granting his pretrial motion to dismiss. He argues that he had insufficient notice of the charges against him due to the changes made in the dates alleged in the information. The trial court ruled that the dates alleged in the information were sufficient to give notice and that no specific dates need be given. We agree that no specific date must be charged to give a defendant notice unless time is an element of the offense. *State v. Fulton*, 742 P.2d 1208, 1214 (Utah 1987). In the instant case, time was not an element of the offense; however, the State has an obligation to provide a defendant, upon request, the best information available to fix the date. Utah Code Ann. § 77–14–1 (1982). Here, upon defendant's request, the prosecution furnished him with the the best information available in order to more precisely establish the dates of the offenses charged. No new or different offenses were included. The details of the incidents were specific and identified each charge on which he had been bound over at the preliminary hearing. He had adequate notice of the charges. Therefore, the trial court's denial of his motion to dismiss was not error.

## II.

■ Defendant next contends that it was error to deny the motion for a mistrial which he made after Dr. Snow was allowed to testify that the victim had seen defendant strike his wife, the victim's mother. Defendant argues that this testimony violated rule 404(b) of the Utah Rules of Evidence, which states:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person *in order to show that he acted in conformity therewith*. It may, however, be admissible for other purposes....

(Emphasis added.) The testimony was not offered to show defendant's propensity for violence, but was elicited to describe the state of mind of the victim. The victim had testified that the reason she did not report the incidents sooner was that she was afraid of defendant. Snow's testimony was an attempt to explain that delayed

reporting is not uncommon in abuse cases and why, given the state of mind of the victim, it would be very frightening to come forward and report the abuse. Since the evidence of "prior bad acts" of defendant was not offered to prove his character or show "that he acted in conformity therewith," the trial court did not err in denying defendant's motion for a mistrial.

### III.

Defendant lastly assails the admission of the opinion of Cindy Rasmussen that the victim had been sexually abused by her father. Following Rasmussen's introductory testimony and recitation of her qualifications, a conference was held in chambers where defendant's counsel conceded that "if she can qualify sufficiently for an expert, she could outline a profile of a sexually molested child and testify as to whether or not the child comes within that profile." But counsel objected to any attempt by Rasmussen to go further and to render an opinion as to whether the victim had been sexually abused. He based his objection on the ground that an expert cannot give an opinion on the ultimate questions to be determined by the jury, which, in this case, were whether the victim had been sexually abused and, if so, by whom. The trial court ruled that Rasmussen was qualified as an expert witness and

> if the foundation is put on as to the reasons why and that satisfies the court that she has enough data to form an opinion in this case, the court feels she can testify as to whether or not [the victim] was sexually abused even though it may go to the ultimate question....

Following this conference, the trial resumed, and Rasmussen testified at length as to her interviews with the victim and as to the symptoms and characteristics she found which matched the profile of an abused child. At the conclusion of her testimony, she was asked whether she had been able to form an opinion as to whether the victim had been sexually abused. She replied, "Yes." Defense counsel objected to her giving her opinion, but the objection was overruled. Rasmussen then proceeded to testify:

> I based my opinion on, first off, on the sexual abuse evaluation that I had with her in which she described those very specific incidents of abuse, very graphically, very explicit detail, as to what had happened to her, and on a combination of a lot of violence that I don't, you know, think, had she been making this up, I don't think she could have come up with that kind of particular combination over and over again of this individual being so extremely violent to her. That would be the first thing that I base my opinion on was the sexual abuse evaluation and those specific explicit details she presented to me.

> The other things that I would base it on are the patterns of behavior that I described to you in the first part of my testimony, characteristics that I've seen in other incest victims, characteristics I've seen documented in the literature about incest in which [the victim] really fit every one of those characteristics....

> I guess maybe the other things, in terms of my therapy with her, I have seen her on a weekly basis since December. There have been times in therapy where a particular emotion will come up related to the abuse that comes very, very spontaneously. That happened in our last session. You know, as far as the torment she was feeling. She expressed a lot of pain and anger that I don't think could have happened if she had not been sexually abused. It was directly related to her experience of having been sexually abused by her father.

█ In our recent decision of *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), we examined at great length the proper role of expert opinion in child abuse cases. There is no need to restate what was there said except insofar as the decision in that case bears upon defendant's objection to Rasmussen's testifying that in her opinion the victim had been sexually abused by her father. In *Rimmasch*, we observed that we could not take judicial notice of "the inherent reliability of the principles underlying the credibility determinations of the experts." *Rimmasch*, 775 P.2d at 407. We further observed that the State in that

case had made no effort to show that the experts were capable of reliably determining whether the victim was telling the truth either from the content of the story or from the victim's affect when telling it. The opinion of Rasmussen given in the instant case lacks the same foundation. The State did not qualify her as an expert on discerning truth; yet Rasmussen's opinion that the victim had been sexually abused was based, in part, on her interviews with the victim as shown by the first paragraph of the quoted material above. There Rasmussen testified that based on the richness of detail given by the victim, she did not think she could have "been making this up." This was clearly an appraisal of the veracity of the child and is in conflict with the observation in *Rimmasch* that those who undertake to treat persons who have suffered sexual abuse have no particular competence to judge the credibility of their patients. While the objection to Rasmussen's opinion was couched by defense counsel in terms of being the ultimate question to be determined by the jury, we think that objection encompasses the point made here that Rasmussen did not possess any expert qualifications for ascertaining truth-telling and that that function should be left to the jury. Since defendant made no objection to the testimony of Rasmussen regarding the profile of an abused child, we refrain from commenting on its propriety.

We therefore conclude that the trial court erred in allowing Rasmussen to give her opinion that the child had been sexually abused by her father. The other evidence against defendant was not overwhelming. The jury acquitted him of one of the three counts. We cannot say that the erroneous admission of Rasmussen's opinion did not affect defendant's substantial rights, Utah R.Evid. 103(a), nor can we safely say that absent the error, there would not have been a more favorable result for defendant. *State v. Hutchison,* 655 P.2d 635, 636 (Utah 1982); Utah R.Crim.P. 30(a). Therefore, defendant's convictions are reversed, and a new trial is ordered.

HALL, C.J., and STEWART and ZIMMERMAN, JJ., concur.

DURHAM, Justice, concurring in the result.

I concur only in the result in this case and not in the majority opinion because I believe it blurs "important conceptual distinctions between inadmissible opinion on credibility and other expert opinion which only indirectly reflects on credibility and is not inadmissible on that ground." *State v. Rimmasch,* 775 P.2d 388, 408 (Utah 1989) (Durham, J., concurring).

My separate opinion in *Rimmasch* sets forth my concerns at length, and I will not repeat them here. The confusion I am worried about comes from such language in the majority opinion as "The State did not qualify [the witness] as an expert on discerning truth; yet [the witness's] opinion that the victim had been sexually abused was based, in part, on her interviews with the victim...." Maj. op. at 1129.

A witness need not, and indeed presumably could not, be qualified as an "expert on discerning truth" in order to give an admissible expert opinion that a child has been sexually abused. Foundation must be laid, of course, and my *Rimmasch* opinion describes a number of factors which might constitute adequate foundation. The majority opinion in this case characterizes the witness's statement that the child could not have "been making this up" as an "appraisal of veracity." I agree that there was inadequate foundation here, but emphasize that an expert opinion on the experiential, developmental, and imaginative potential of children of a certain age and background might well be within the proper purview of a child psychological expert in an appropriate case. The fact that an opinion on the *capacity* of a certain child to "make up" evidence of sexual abuse indirectly relates to the child's veracity would not, in that case, render it inadmissible.