**STATE of Missouri, Respondent,**

v.

**Robert DAVENPORT, Appellant.**

No. 17884.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 16, 1992.

William J. Swift, Columbia, for appellant.

William L. Webster, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Appellant, Robert Davenport, was tried by jury on four counts, acquitted of one (Count II), and found guilty of three:

Count I: Forcible rape, § 566.030.1, RSMo 1986.

Count III: Sodomy, § 566.060.3, RSMo 1986.

Count IV: Sexual assault in the first degree, § 566.040, RSMo 1986.

The trial court, having found Appellant a prior offender, § 558.016.2, RSMo Cum. Supp.1991, sentenced him to these terms of imprisonment: Count I, fifteen years; Count III, ten years; Count IV, four years. The trial court specified the sentences shall run consecutively. Section 558.026.1, RSMo 1986.

All crimes allegedly occurred between September 1, 1988, and November 30, 1988. The victim in Counts I and IV was Appellant's daughter, Tracy,[1] born May 24, 1974. The victim in Count III was Appellant's daughter, Melissa,[2] born January 29, 1976.

Appellant brings this appeal, presenting two assignments of error. Because neither challenges the sufficiency of the proof to support the three guilty verdicts, we need not summarize the sordid evidence.

We first address Appellant's second point relied on, which complains about Instruction 4, the burden of proof instruction defining reasonable doubt (MAI–CR 3d 302.04). Appellant maintains the instruction allowed the jury to convict him "on a degree of proof below that required by due process." Appellant concedes this claim of error was unpreserved in the trial court,[3] and consequently is reviewable, if at all, only for plain error.[4]

The identical attack has been previously made on the same instruction, and has been rejected by the Supreme Court of Missouri. *State v. Griffin*, 818 S.W.2d 278, 282[7] (Mo. banc 1991). See: *State v. Moore*, 832 S.W.2d 335, 336 (Mo.App.1992). The trial court committed no error, plain or otherwise, in giving Instruction 4. Appellant's second point is meritless.

Appellant's first point complains about a segment of the prosecutor's opening statement. Outlining the State's proof, the prosecutor said that during the period alleged, Appellant engaged in sexual intercourse and other sexual activity with Tracy at night. The liaisons occurred in a room where Tracy, Melissa, and two younger children slept. The prosecutor narrated:

[Tracy] will tell you that especially in the beginning there were times when she tried to resist him, that she pushed him away, that she would say no and try to push him off of her. And in fact, one occasion she said to him, "You're my father. You shouldn't be doing these kinds of things to me." And he said something to her and she slapped him.

... She became very fearful that he would respond.

---

1. Tracy's surname is not Davenport. She testified this is because her mother and Appellant were unmarried when she was born.

2. Like Tracy, and for the same reason (footnote 1, *supra* ), Melissa's surname is not Davenport.

3. The lawyer representing Appellant in this appeal is not the lawyer who represented him in the trial court.

4. Relief for plain error is granted only when an error so substantially affects the rights of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Hadley*, 815 S.W.2d 422, 423[1] (Mo. banc 1991).

In fact, he got very angry with her.... And he was shaking, he was so angry with her.

... He said, "I'm going to get what I want whether you like it or not," essentially, and he went back on top of her.

She again tried to push him off. And this time he pinned her hands down to the floor, pinned her down and proceeded to have sexual intercourse with her on that occasion.

....

Most of the time, she will tell you, she did not fight her father. She would try to find some way to wake the kids next to her. She would accidentally on purpose nudge one of the children next to her.... But she was always fearful of doing that because she was never sure how her father was going to respond, whether he was going to get very angry at her or if he was just going to get up and leave her alone through the night.

She will tell you that she did find him very intimidating for even though he didn't beat her, she did see him abuse her mother.

At that juncture, Appellant's lawyer objected and a bench conference ensued outside the hearing of the jury. The following exchange occurred:

[Appellant's lawyer]: I object to any evidence that the state intends to elicit that the girls allegedly saw him beat someone else or their mother years before this. Has nothing to do with it.

[Prosecutor]: I think it has something to do with compulsion. I think that's one of the elements of fear, that what was done to their mother would be done to her.

[Appellant's lawyer]: Your Honor, it's too remote in time. It's bringing in evidence of other crimes, uncharged, against [the mother]....

The trial court overruled the objection. However, the prosecutor said nothing more to the jury on the subject.

5. Susan is the mother of Tracy and Melissa. Like them, Susan does not use the surname

Tracy, presented as a witness by the State, testified that during the period in question, Appellant had sexual intercourse with her "a lot of times." She described one occasion on which he said he "was going to get what he wanted" and held her wrists "down tight." She recalled, "I was scared of my dad at that time." Tracy conceded she told no one about Appellant's conduct for several months, but explained, "I was afraid of my father."

The prosecutor never asked Tracy about seeing Appellant abuse her mother, and Tracy never mentioned any such abuse.

Appellant's first point reads:

The trial court erred and abused its discretion when it overruled [Appellant's] objection to [the State] indicating it intended to rely on evidence, presented through Tracy ... that [Appellant] had abused his ex-wife, Susan[5] ..., because it deprived [Appellant] of his right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that [the State] was referring to alleged uncharged acts which appealed purely to the passions and prejudices of the jury and resulted in [Appellant's] convictions.

Evidence of commission by the accused of crimes separate and distinct from the crime with which he is charged is generally inadmissible. *State v. Mallett,* 732 S.W.2d 527, 534[4] (Mo. banc 1987), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). However, such evidence is generally admissible to prove the crime charged when it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the accused as the culprit. *Id.,* 732 S.W.2d at 534[4].

Appellant argues that evidence showing he may have been abusive to Susan had "no legitimate tendency" to estab-

Davenport.

lish his guilt of "the alleged sexual offenses pertaining to Melissa and Tracy."

The State responds: "The expected testimony would have shown why [Tracy] did not physically resist her father, Appellant, when he wanted to have sexual intercourse." The State maintains the prosecutor was in good faith in saying the State intended to adduce evidence that Tracy saw Appellant abuse Susan. The State concedes it presented no such evidence.

An analogous, though not identical, situation occurred in *State v. Brooks*, 618 S.W.2d 22 (Mo. banc 1981). There, the prosecutor, during opening statement, recounted information the police received from an informant. The accused moved to strike, but the trial court denied the motion. However, when the prosecutor attempted to present such evidence, the accused successfully prevented it by objection. He was nonetheless convicted. On appeal, he assigned error in the trial court's denial of the motion to strike. Affirming the conviction, the Supreme Court of Missouri said:

> [T]he scope and manner of opening statement is largely within the discretion of the [trial] court which necessarily must rely upon the good faith of counsel in making opening statements to a jury as to material facts they intend to prove.... When the issue concerns the trial court's exercise of discretion relative to opening statements, no error requiring reversal will be found if a challenged statement refers to arguably admissible evidence and the reference was made in good faith with a reasonable expectation the evidence will be produced.

*Id.* at 24[3–5].

Obviously, the first issue we must address is whether evidence that Tracy had seen Appellant abuse Susan was arguably admissible.

As we have seen, Count I charged Appellant with forcible rape of Tracy in violation of § 566.030.1, RSMo 1986. That section reads:

> A person commits the crime of forcible rape if he has sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

Sexual intercourse which is not resisted because of fear is not consensual. *State v. Hannett*, 713 S.W.2d 267, 271[1] (Mo.App.1986). Lack of consent may be established by a showing of actual force or a showing that the victim submitted because of fear induced by violence or threats of violence. *Id.* at 271[2].

In *Hannett*, the accused was charged with forcible rape, forcible sodomy and kidnapping. He admitted the sex acts, but avowed the victim (his ex-wife) consented. She testified she did not consent, but submitted because of fear. She recounted several incidents of physical violence inflicted on her by the accused prior to the incidents in question. In holding the evidence sufficient to establish absence of consent by the victim, the Western District of this Court stated the victim obviously took into account the previous experiences when the accused inflicted physical harm upon her. 713 S.W.2d at 271.

*Hannett* implicitly recognizes that in forcible rape prosecutions, evidence of violence by the accused against the victim on occasions preceding the alleged rape is admissible if an issue exists as to whether the victim's lack of resistance was attributable to fear of physical injury. Surprisingly however, neither side cites, and we cannot independently find, any Missouri case addressing the situation where a rape victim's fear of physical injury if she resists is attributable to violence she has seen the rapist inflict on others. While the issue is apparently undecided in Missouri, other jurisdictions have resolved it.

In *People v. Barlow*, 88 A.D.2d 668, 451 N.Y.S.2d 254 (1982), the accused was convicted of first degree rape of his 13–year-old daughter and other sex crimes against her and another teenage daughter. The victims testified they were afraid of the accused; he weighed over 300 pounds. On appeal, the accused complained about testimony from other witnesses that they had observed violence by him against his wife

and children. Affirming the conviction, the appellate court said:

> The testimony concerning defendant's violent treatment of his wife and children was ... properly introduced. Those incidents were probative of the victims' state of mind and relevant to prove that defendant used "forcible compulsion", a necessary element of first degree rape.

451 N.Y.S.2d at 256[6].

*Barlow* was cited with approval in *People v. Velasquez*, 141 A.D.2d 882, 530 N.Y.S.2d 208 (1988). There, the accused was convicted of multiple sex crimes against his 13–year–old stepdaughter, including rape and sodomy. On appeal, he assigned error in the admission of evidence of "past attacks" by him on his wife. Affirming the conviction, the appellate court said:

> [T]his evidence was probative of the victim's state of mind and relevant to prove that the defendant used forcible compulsion. . . .

530 N.Y.S.2d at 208[2].

In *State v. Haseltine*, 120 Wis.2d 92, 352 N.W.2d 673 (App.1984), the accused was convicted of sexual contact with his 16–year–old daughter. She testified he had repeatedly engaged in sexual intercourse with her over a two-year period, and had beaten other family members. The accused allegedly struck and kicked the victim and threatened her with death if she told anyone about the sexual abuse. The appellate court held:

> Testimony concerning Haseltine's physical abuse of family members was ... properly admitted to show that the victim had reason to believe Haseltine's threats.

352 N.W.2d at 676[6].

In *State v. Bates*, 784 P.2d 1126 (Utah 1989), the accused was convicted of two counts of raping his minor daughter. One of his claims of error on appeal was that the trial court wrongly allowed a doctor to testify about an instance where the victim witnessed the accused strike her mother. The accused maintained this was prejudicial evidence of "prior bad acts." *Id.* at 1127. Rejecting the complaint, the Supreme Court of Utah held:

The testimony was not offered to show defendant's propensity for violence, but was elicited to describe the state of mind of the victim. The victim had testified that the reason she did not report the incidents sooner was that she was afraid of defendant. [The doctor's] testimony was an attempt to explain that delayed reporting is not uncommon in abuse cases and why, given the state of mind of the victim, it would be very frightening to come forward and report the abuse. *Id.* at 1127–28[2].

In *Stinson v. State*, 197 Ga.App. 687, 399 S.E.2d 278 (1990), the accused was convicted of sundry crimes including rape and incest; the victim of those crimes was one of his daughters. On appeal, he asserted the trial court erred in receiving (a) testimony by the victim that she had been beaten by the accused numerous times and had witnessed the accused beating her mother, and (b) testimony by the mother that the accused had beaten her numerous times in the victim's presence. Holding such evidence admissible, the appellate court said:

> [The victim's] credibility, which might be sustained by prompt reporting of the offense or by offering an explanation for the failure to do so, as well as by her reaction to and interaction with [the accused], were relevant issues for the jury's consideration.

399 S.E.2d at 279[2].

In *Lenard v. State*, 796 P.2d 636 (Okl.Cr. 1990), the accused was convicted of two counts of incest. The evidence showed he began having sexual intercourse with two of his daughters when each reached age thirteen. On appeal, he assigned error in the admission of evidence that he physically abused his wife and daughters, arguing such evidence violated the rule against proof of "other crimes." The appellate court disagreed:

> Appellant testified that he did not commit the crimes against his daughters. His wife, the girls' mother, testified that although one daughter told her of the sexual abuse, she chose to believe the girl's retraction, which came after a confrontation with Appellant. Both girls

testified that they were very afraid of their father because he beat them and their mother. We find that the evidence of the physical abuse was relevant to show why the girls did not report the crimes sooner and to explain why one of the girls later told her mother she had lied after having confided in her. There is no error requiring reversal....

*Id.* at 637–38[2].

In all the foreign cases discussed above, the victims were minors—the situation in the instant case. Similar results have been reached in cases where the victims were adults. For instance, in *State v. Pancake,* 170 W.Va. 690, 296 S.E.2d 37 (1982), the accused was convicted of first degree sexual assault by having sexual intercourse with a woman by forcible compulsion. He maintained she consented. She avowed she submitted for fear the accused would hurt her. To substantiate her fear she testified, among other things, that she had seen the accused hit her sister and put a cigarette out on her face. 296 S.E.2d at 40. On appeal, the accused complained such evidence was proof of collateral crimes and hence inadmissible under a rule similar to the Missouri rule in *Mallett,* 732 S.W.2d at 534[4]. The Supreme Court of Appeals of West Virginia held otherwise, declaring:

Evidence that a defendant committed violent or turbulent acts toward a rape victim or toward others about which the victim was aware, is relevant to establish the fear that is a major element of proof of first-degree sexual assault.

*Id.* 296 S.E.2d at 41.

Like results were reached in *People v. Solis,* 172 Cal.App.3d 877, 218 Cal.Rptr. 469, 472–74 (Cal.App. 5 Dist.1985), and *State v. Iaukea,* 56 Haw. 343, 537 P.2d 724, 729–32 (1975). The latter case discusses additional consistent decisions from other jurisdictions.

Returning to Missouri, we note that in *State v. Waller,* 816 S.W.2d 212 (Mo. banc 1991), our Supreme Court held that in a homicide case where the accused claims self-defense, the trial court may permit the accused to introduce evidence of the victim's prior specific acts of violence of which the accused had knowledge, provided such acts are reasonably related to the crime with which the accused is charged. *Id.* at 216[2]. Such evidence is relevant to the reasonableness of the accused's apprehension that the victim was about to inflict bodily harm on him. *Id.* at 216[5].

By the same logic, it is arguable that in forcible rape prosecutions, evidence of prior acts of violence by the accused against third parties within the victim's knowledge should be admissible where the victim testifies she did not consent but submitted because she feared the accused would injure her if she resisted.

In adjudicating this appeal we need not, and do not, decide whether such evidence is admissible. All we need decide is whether such evidence is *arguably* admissible. *Brooks,* 618 S.W.2d at 24[5]. The authorities heretofore discussed convince us that if Tracy had seen Appellant inflict physical abuse on Susan prior to the forcible rape charged in Count I, such evidence was arguably admissible on the issue of whether Tracy's failure to physically resist Appellant was attributable to fear of injury. We are likewise convinced such evidence was arguably admissible on the issue of whether Tracy's delay in revealing Appellant's flagitiousness was attributable to fear of him.

This brings us to the second issue spelled out in *Brooks,* 618 S.W.2d at 24[5]. Was the prosecutor's reference to such evidence made in good faith with a reasonable expectation the evidence would be produced?

Scrutiny of Appellant's objection at trial reveals no accusation that the prosecutor's reference to such evidence was in bad faith or lacked a reasonable expectation such evidence would be adduced. Appellant's only objection was that such evidence was irrelevant, too remote in time, and constituted proof of uncharged crimes.

A ground of objection on appeal is limited to that stated at trial. *State v. Johnson,* 483 S.W.2d 65, 67–68[5] (Mo. 1972); *State v. Herrick,* 814 S.W.2d 660, 663[3] (Mo.App.1991). Furthermore, it appears from the objection that Appellant's

lawyer was aware such evidence existed.[6] The contention that the evidence was "too remote in time" implies Appellant's lawyer was mindful Tracy had seen Appellant abuse Susan but such conduct was not recent.

 The record yields no clue as to why the prosecutor failed to present such evidence. It may have been through oversight, or the prosecutor may have feared the danger of reversible error. In any event, given the absence of a contention at trial that the prosecutor acted in bad faith, the record is sufficient to support an inference that the prosecutor's reference to such evidence was in good faith and with a reasonable expectation such evidence would be produced. In such circumstances, there is no reversible error where such proof is not made because evidence is either excluded or omitted. *State v. Paige,* 446 S.W.2d 798, 805[6] (Mo.1969); *State v. Underwood,* 530 S.W.2d 261, 263[4] (Mo. App.1975).

Appellant's first point is denied.

Judgment affirmed.

PARRISH, C.J., and SHRUM, J., concur.

---

6. Appellant's lawyer took Tracy's deposition two days before trial.