**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ronald L. FICKE, Defendant–Appellant.**

**No. 19110.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 14, 1995.

Matthew J. O'Connor, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GARRISON, Presiding Judge.

Following trial by jury, Appellant was convicted of the felony of sodomy, § 566.060.3, RSMo Supp.1990, and was sentenced to 20 years' imprisonment. He raises three points of error which relate to the admission of statements he made to a member of the Missouri Highway Patrol, the introduction of evidence of other uncharged crimes and bad acts, and the State's exercise of peremptory challenges.

The alleged victim (victim) was the nine-year-old daughter of a lady (Karen) whom Appellant met in December 1990 and began dating in February 1991. The victim, who at the time of trial was ten years old, testified that on an occasion when her mother was not home, Appellant came into her bedroom and touched her "private parts" under her panties with both his hand and mouth. She also testified that Appellant asked her to touch and later to use her mouth on him, which she refused. According to the victim, Appellant warned her that if she told anyone he would do it again and would hurt her family.

The victim testified that she did not immediately tell anyone because she was scared.[1] According to Karen, the victim began losing weight, had trouble sleeping, cried a lot, started wetting her bed, was afraid to be left alone, and would hide in the house when a loud car would go by. As a result, Karen scheduled an appointment at a hospital in St. Louis for the victim to be examined. On April 5, 1992, the day before that appointment, the victim told Karen that Appellant had molested her.

Appellant testified in his own defense and, while he admitted having watched Karen's daughters, including the victim, twice in March 1991, he denied touching or using his mouth on the victim as she alleged.

---

1. The evidence did not indicate the date or month of the alleged offense. The amended information under which Appellant was tried alleged that the offense occurred sometime between January 1, 1991 and January 1, 1992.

In his first point, Appellant contends that the trial court erred in overruling his motion to suppress statements which, he alleges, were given during a polygraph examination, on the theory that they were "the product of trickery and deceit and not of a knowing and intelligent waiver." This point refers to oral statements, later reduced to writing and signed by Appellant, while he was in the highway patrol headquarters in connection with a polygraph examination requested by him.

■ Appellate review of the trial court's ruling on a motion to suppress is limited to determining whether the evidence was sufficient to sustain the trial court's finding. *State v. Perrone*, 872 S.W.2d 519, 521 (Mo. App.S.D.1994). The appellate court defers to the trial court in assessing the credibility of witnesses and weighing the evidence. *Id.* The facts and reasonable inferences arising therefrom are to be considered favorably to the ruling and contrary evidence and inferences are disregarded. *Id.*

Appellant cites cases such as *State v. Mahany*, 748 S.W.2d 762, 764 (Mo.App.E.D. 1988), and *State v. Biddle*, 599 S.W.2d 182, 191 (Mo. banc 1980), for the proposition that polygraph examinations are inadmissible. He then argues that although the statements in question were made during the post-test interview, following the actual administration of the polygraph test, they were a part of the polygraph examination process. He weaves into this argument the contention that he understood from his attorney that statements he made during the polygraph examination could not be admitted against him.

Evidence presented on the motion to suppress indicated that Appellant had requested the polygraph examination which was administered in Jefferson City in the absence of his attorney. At the beginning of the polygraph procedure, he was advised of his Miranda rights and signed a written waiver. He acknowledged that he read his rights, understood them, signed the waiver, and knew what he was signing. He also testified that he understood his rights when he later made the statements which he now alleges should be suppressed.

*Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982), involved a similar factual scenario. There, as here, the defendant requested a polygraph examination, signed a waiver of his Miranda rights prior to the test, and after failing the test gave a statement which he claimed should have been suppressed. The Supreme Court held that the defendant waived his right to have counsel present at "post-test" questioning, "unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." 459 U.S. at 47, 103 S.Ct. at 396, 74 L.Ed.2d at 218. The court also noted that "[a]lthough the results of the polygraph examination might not have been admissible evidence, the statements Fields made in response to questioning during the course of the polygraph examination surely would have been." 459 U.S. at 48, 103 S.Ct. at 396, 74 L.Ed.2d at 219.

■ Missouri courts have also permitted the admission of statements made during a post polygraph examination interview. *State v. Dixon*, 655 S.W.2d 547, 555–556 (Mo.App. E.D.1983). See also *State v. Owens*, 759 S.W.2d 73, 75 (Mo.App.S.D.1988), which approved introduction of a statement made after the polygraph operator determined that the defendant was not an "appropriate subject" for a test. Therefore, the fact that the statements were made during an interview following the administration of a polygraph examination does not, in itself, require that they be suppressed.

■ Appellant argues that because he believed statements made during the polygraph examination would be inadmissible, he was tricked into making the statements during the "post-test" interview. He argues, therefore, that he did not make a knowing and intelligent waiver of his Miranda rights. In the instant case, there was evidence from which the trial court could have found that the statements were voluntary and were not extracted by reason of any "trickery and deceit" as alleged by Appellant. It was not required that Appellant be re-advised of his Miranda rights after the actual giving of the polygraph examination and before any "post-

test" interview. *See State v. Dixon*, 655 S.W.2d at 556. Under the standard of review applicable to this point, Appellant's contention that the trial court erred in failing to suppress the statements in question is without merit.

In his second point, Appellant complains that the trial court allowed evidence of uncharged crimes which were unrelated to the charge of which he was convicted. The evidence in question concerned incidents in which a tire on Karen's car was slashed while she was at church and the word "slut" was scratched onto her mailbox at the post office.[2] He acknowledges that counsel did not object to the evidence when presented at trial and, therefore, seeks a plain error review.

■ Rule 30.20[3] provides that plain errors affecting substantial rights may be considered in the discretion of the court when it finds that manifest injustice or miscarriage of justice has resulted therefrom. The assertion of plain error, however, places a much greater burden on a defendant than when he asserts prejudicial error. *State v. Clements*, 849 S.W.2d 640, 644 (Mo.App.S.D.1993). A defendant asserting plain error must not only show that prejudicial error resulted, he must further show that the error so substantially affected his rights that manifest injustice or a miscarriage of justice will inexorably result if left uncorrected. *Id.* Unfortunately, plain error is a unique and elusive concept because of its lack of fixed dimensions and, therefore, must be coped with on a case by case basis and rebalanced each time against the particular facts and circumstances of each case. *State v. Hooker*, 791 S.W.2d 934, 938 (Mo. App.S.D.1990).

Appellant cites *State v. Bernard*, 849 S.W.2d 10, 13 (Mo. banc 1993), for the proposition that evidence of uncharged misconduct may be introduced only where it has the tendency to prove motive, intent, the absence of mistake or accident, a common plan or scheme, or the identity of the person charged. He argues that the evidence in question did not fit into any of those exceptions and further that it was not logically relevant to the charge of sodomy.

■ The State argues, however, that the acts of vandalism, together with other evidence of Appellant's harassment of Karen and the family, which was also not objected to, supported the victim's testimony that she did not report the incident sooner because of her fear of Appellant. Uncharged acts committed against third persons may be admissible in corroboration of the victim's fear of the accused. *See State v. Davenport*, 839 S.W.2d 723, 728 (Mo.App.S.D.1992). In *Davenport*, this court indicated that evidence of the defendant's physical abuse of the victim's mother, known to the victim, was arguably admissible on the issue of whether the victim's delay in reporting the defendant's acts against her was attributable to fear. *Id.*

■ Appellant does not allege that plain error occurred because the evidence was admitted without a sufficient foundation to justify its introduction. Rather, his contention is based on the premise that evidence of this nature was inadmissible because it was irrelevant and did not fall under one of the exceptions to the general rule specified in *Bernard.* As indicated in *Davenport*, however, such evidence can arguably be admissible. Even if admission of the evidence in question was error, Appellant has failed to carry his burden of establishing that it resulted in a manifest injustice or miscarriage of justice. This point is, therefore, denied.

In his final point, Appellant alleges error in the State's use of its peremptory strikes, contending that it amounted to a systematic exclusion of male venirepersons from the jury. He argues that, in response to his objection on that basis, the State failed to provide the trial court with gender-neutral explanations for such strikes.[4] Although not

---

**2.** Appellant admitted committing these acts in the statement referred to in the preceding point.

**3.** All references to rules are to Missouri Rules of Court, V.A.M.R.

**4.** The United States Supreme Court has extended the principles of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (prohibiting racial discrimination in the exercise of peremptory challenges in jury selection) to discrimination based on gender. *J.E.B. v. Alabama ex*

mentioned in the briefs, our review of the record indicates that Appellant failed to include this claim of error in his motion for new trial and, therefore, failed to preserve it for appellate review. See Rule 29.11(d); *State v. Dampier,* 862 S.W.2d 366, 376 (Mo. App.S.D.1993). Appellant does not request that we review this point for plain error and we decline to do so *sua sponte. State v. Root,* 820 S.W.2d 682, 686 (Mo.App.S.D. 1991); *State v. Rayford,* 611 S.W.2d 377, 378 (Mo.App.E.D.1981). *See also State v. Childs,* 876 S.W.2d 781, 784 (Mo.App.E.D.1994).

The judgment is affirmed.

CROW and PREWITT, JJ., concur.

*rel. T.B.,* —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). *See also State v. Hayden,*

878 S.W.2d 883, 885 (Mo.App.E.D.1994).