**STATE of Missouri, Plaintiff–Appellant,**

v.

**James T. COOK, Defendant–Respondent.**

No. 18520.

Missouri Court of Appeals,
Southern District,
Division Two.

May 4, 1993.

Motion for Rehearing or to Transfer
Denied May 26, 1993.

Application to Transfer Denied
June 29, 1993.

Thomas E. Mountjoy, Pros. Atty., Pat J. Merriman, Asst. Pros. Atty., Greene County, Springfield, for plaintiff-appellant.

Louis J. Nolan, Springfield, for defendant-respondent.

---

FLANIGAN, Judge.

This is an interlocutory appeal by the state, pursuant to § 547.200.1, RSMo 1986, from an order of the trial court suppressing evidence. The order was entered in the underlying criminal case in which defendant-respondent James Cook is charged with the Class C felony of possessing more than 35 grams of marijuana.

The information alleges that the offense took place on February 25, 1992, in Greene County. Defendant filed a pretrial motion to suppress evidence. The motion sought suppression of the marijuana, test results concerning the marijuana, and statements made by defendant after his arrest. The motion alleged that the search of defendant's vehicle and the seizure of the marijuana violated defendant's rights under the provisions of the Constitution of the United States and the Constitution of Missouri pertaining to unreasonable searches and seizures. Following an evidentiary hearing, the trial court sustained defendant's motion, and this appeal ensued.

The state's sole point is that the trial court erred in sustaining defendant's motion because defendant consented to an interior inspection of his vehicle by Corporal Clay Crowe during a routine traffic stop, and "defendant's consent to look in the vehicle authorized the trooper's plain view detection of the odor of marijuana, thus providing an independent probable cause for a full scale search of the automobile."

At the hearing on the motion to suppress, the state's witnesses were Corporal Crowe and Corporal David Henson of the Highway Patrol. Defendant did not present any evidence. There is no significant factual dispute.

Corporal Crowe testified: "On February 25, 1992, while on duty, I encountered a GMC van driven by defendant on U.S. I–44 in Greene County. Defendant was going 63 miles per hour in a 55 miles per hour speed zone. I activated my emergency lights and attempted to stop the van. It drove down to the shoulder about 200 yards before coming to a complete stop. Defendant got out of the van and I met him at the back of the van. I asked to see his driver's license. When defendant reached in his billfold to get it, his hands were shaking uncontrollably and he was very nervous.

"I patted him down and found no weapons. I had him stand at the right front corner of the van and I did a brief search around the driver's side area for a weapon. I was concerned about defendant because his hands were shaking, he would not face me, he would not make good eye contact with me, he was stuttering, and he wanted to talk to me at a very low volume. I was concerned he might have a weapon in the vehicle.

"Defendant was traveling alone, but he had a dog with him on the passenger's side of the driver's seat. I asked defendant if he was carrying any weapons or drugs and he said, 'No.' I asked him if I could look in the back of the van and he said 'Yes.' Defendant got the keys from the ignition, unlocked the door, and opened the doors for me. I searched the van with the doors folded back and defendant standing to the right.

"There was a custom made bed in the van which had a long compartment at the bottom of it. I went to that compartment and pulled a large door down. He had several items stacked in there. There were a couple of boxes of boots and some other clothing items. I reached down to remove the boot boxes and at that time I smelled what appeared to be freshly processed marijuana. I have had training in the detection of marijuana and have smelled it at least 100 times. The freshly cut grass or plant material has a very strong pungent odor to it, and this smelled like marijuana.

"As I moved the boxes to one side, I attempted to reach a large maroon suitcase which was under the bed. I was about to get to the suitcase when defendant stepped up beside me and took the boot boxes and dropped them down or slid them down over on my hands. I asked if I could look in the suitcase and he said, 'No,' and he started grabbing the doors to close them. I got out of the situation because I was afraid a fight was going to take place or he was going to take off running.

"After defendant closed the van doors and locked them, I asked him to wait in the van. I went back to the patrol car and radioed headquarters for a backup. Corporal Henson arrived in about five minutes and I told him the situation. Corporal Henson had his dog Wiko with him. We had Wiko walk around the van. Defendant was standing off to the side holding his dog. Henson opened the van doors, pulled the suitcase out, and opened it. It contained freshly processed marijuana. I arrested defendant for felony possession of marijuana, handcuffed him, and read him his Miranda rights. Defendant was taken to headquarters. At headquarters, defendant said that he had bought the marijuana from two Mexicans in Texas."

Corporal Henson testified: "On my arrival at the scene, I talked with Corporal Crowe and conducted a canine search of the vehicle with Wiko; I had Wiko sniffing as we went around the van. When Wiko senses something, he will shut his mouth and breathe intensely through his nose. Then he is aggressive and scratches and bites and barks and tries to get at the object holding the scent. On this occasion, Wiko alerted me on the back doors of the van. He was sniffing very intensely and scratching the rear doors. After Wiko alerted the back of the van, I returned Wiko to my car.

"Based on what Corporal Crowe told me and the fact that Wiko did alert, and based on the demeanor of defendant, I was satisfied there were drugs in the van. I searched the van. Under the bed there was a space 12 inches high. In that space were a maroon suitcase and a pair of cowboy boots in a box. As I reached for the suitcase I could definitely smell the odor of marijuana. I have had training in detecting marijuana. I opened the suitcase and found processed marijuana wrapped in a black plastic bundle. At that point, Crowe placed defendant under arrest and gave defendant his Miranda warnings. The suitcase was in view when the back doors of the van were open. On the way to headquarters, defendant told me there was 30 pounds of marijuana in the back of the van."

At the close of the state's evidence, the trial court sustained the motion. The court said:

The Court focuses then, upon the language that Trooper Crowe used on two occasions, and that is what has been concerning me. The language which would form the basis for the opening of the lid and the removing of the boot boxes would be: "Do you mind if I take a look?" And the answer of the defendant, yes, and he opened up the back doors. At no time in my memory did Trooper Crowe testify that he asked permission to search. There's a difference between looking and searching and the opening of a lid, and the moving of the boxes is clearly beyond looking.... The Court finds that the defendant did not give consent to a search; he gave consent to a look. That the discovery of the suitcase and the smell of the marijuana by Officer Crowe came while conducting a search that was in violation of the Fourth Amendment.

█ Appellate review of a trial court's ruling on a motion to suppress is limited to a determination of sufficiency of the evidence to sustain the trial court's finding. *State v. Villa–Perez*, 835 S.W.2d 897, 902 (Mo. banc 1992). "[I]n so doing, we examine all circumstances and the total atmosphere of the case, and defer to the trial court's vantage point in assessing the credibility of the witnesses and weighing the evidence." *Id.* "Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990). If the trial court's ruling "is plausible in light of the record viewed in its entirety," this court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 184. Where, as here, there is no factual dispute, determination of the reasonableness of a search, under the Fourth Amendment, is a question of law. *U.S. v. Walker*, 941 F.2d 1086, 1090 (10th Cir.1991); *U.S. v. Pena*, 920 F.2d 1509, 1513–1514 (10th Cir.1990); *U.S. v. Arango*, 912 F.2d 441, 444 (10th Cir.1990).

In *Villa–Perez, supra,* the court said, at 902:

The proponent of [a motion to suppress] has the burden of establishing that his constitutional rights were violated by the challenged search or seizure, however the burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement, e.g. search of a stopped car on a highway. *A search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile is a well established exception to the Fourth Amendment warrant requirement....* Such automobile search may be conducted on probable cause to believe that contraband is concealed within, a belief springing from circumstances that would justify issuance of a warrant. Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend the law. (Emphasis added.)

In *State v. Hyland,* 840 S.W.2d 219, 221 (Mo. banc 1992), the court said:

Where consent is lawfully obtained, law enforcement officers may conduct a search commensurate in scope with the permission given. *This is so even though the search was not otherwise supported by probable cause or reasonable suspicion of criminal activity. Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). "The Fourth Amendment ... merely proscribes those (searches) which are unreasonable.... Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* — U.S. —, —, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). (Emphasis added.)

The facts in *Hyland,* as the state's brief points out, are similar in certain respects to those here. In *Hyland,* during a traffic stop for speeding, the trooper asked to see the driver's license of Hyland. Hyland was nervous and uneasy. The trooper did not see any of his personal belongings in the car, although Hyland said he was moving from one state to another. The trooper asked Hyland for permission to look in the trunk. Hyland agreed and opened the trunk. In the trunk the trooper saw a suitcase sealed with tape, and the trooper asked Hyland for permission to look inside the suitcase. Hyland removed the tape and lifted the lid, which revealed articles of clothing. The trooper placed his hand under the clothes and found a brick of marijuana wrapped in cellophane. The trial court overruled defendant's motion to suppress, and the supreme court affirmed. The court said that Hyland's consent to the search occurred during the time reasonably necessary to carry out the purposes of the traffic stop and that there was no merit to Hyland's claim that the stop was unduly lengthy. The court said, at 222:

Hyland freely and voluntarily consented to the search of the trunk of the automobile and to some inspection of the contents of the suitcase. The scope of the search to which Hyland consented is the sole question left for resolution. Hyland argues that Sergeant Brown's request to "look inside" his suitcase and his assent to that request did not include consent to inspect the contents of the suitcase.

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* — U.S. at — – —, 111 S.Ct. at 1803–04.

The briefs invite us to engage in a semantic exercise focusing on the meaning of the word "look." The State naturally argues that the word is an active one and includes permission to conduct a complete search; Hyland thinks the word is passive, limited to a superficial, visual inspection. The debate has meaning only within the context of the facts of the

case. The relevant question is not simply the meaning of the verb "to look" but whether it was objectively reasonable for Sergeant Brown to consider that Hyland's permission to look inside the suitcase included consent to examine the contents of the suitcase. We think that it was.

In consenting to Sergeant Brown's request to look inside, Hyland placed no limitations on the scope of the search to which he consented. Further, Hyland stood without protest, holding the lid of the suitcase up, as Sergeant Brown placed his hand under the clothes and felt the brick of marijuana. A reasonable person, viewing this scene objectively, would necessarily conclude from Hyland's verbal and nonverbal actions that Hyland consented to the scope of the search Sergeant Brown conducted.

We hold that Hyland's consent extended to a search of the contents of the suitcase. (Emphasis in original.)

In the case at bar, the trial court found that the defendant gave consent to "a look" but did not give consent "to a search." The court stated, "The moving of the boxes is clearly beyond looking," and "the discovery of the suitcase and the smell of the marijuana by Officer Crowe came while conducting a search that was in violation of the Fourth Amendment."

As stated in *Villa–Perez, supra,* a search of an automobile on the highway pursuant to probable cause to believe that contraband is within the automobile is an exception to the Fourth Amendment warrant requirement. As stated in *Hyland, supra,* where consent is lawfully obtained, the officer may conduct a search commensurate in scope with the permission given, even though the search was not otherwise supported by probable cause.

As stated in *defendant's* brief filed in this court, "Trooper Crowe then reached inside this compartment and moved the boot boxes. At this juncture Trooper Crowe stated that he smelled what appeared to be freshly processed marijuana. Immediately thereafter, Mr. Cook slid the boot boxes over Trooper Crowe's hands

and Trooper Crowe retreated from the inside of the van. The trooper then asked for further permission to search, which was denied by Mr. Cook, who then closed and locked the van doors."

There is no factual issue concerning whether Corporal Crowe smelled marijuana. The trial court found that he did. The detection of that odor gave rise to probable cause to believe that marijuana was within the automobile. *State v. Villa–Perez, supra,* at 902; *United States v. Loucks,* 806 F.2d 208, 209, n. 1 (10th Cir.1986). What happened after the time of that detection is of no moment so far as consent to look or to search is concerned. The existence of probable cause eliminated a need for an independent basis, such as valid consent, for a warrantless search.

Up to the moment that Crowe detected the odor of marijuana, defendant made no objection to the conduct of Crowe inside the van. His only protest came after the detection. That protest consisted of sliding the boot boxes over Crowe's hand. To borrow the language from *Hyland, supra,* a reasonable person, viewing this scene objectively, would necessarily conclude from defendant's verbal and nonverbal actions that defendant consented to the scope of the search Crowe conducted ... up to and including the moment of Crowe's detection of the odor of marijuana.

For the foregoing reasons this court holds that the evidence is insufficient to support the trial court's finding that defendant's constitutional rights were violated. The state's point is valid. See also *State v. Law,* 847 S.W.2d 134, 136–137 (Mo.App. 1993).

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

MONTGOMERY, P.J., and PREWITT, J., concur.