STATE of Missouri, Plaintiff–Appellant,

v.

Charles PERRONE, Defendant–
Respondent.

No. 18856.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Feb. 22, 1994.

Application to Transfer Denied
April 26, 1994.

---

John D. Beger, Pros. Atty., Patrick L. King, Asst. Pros. Atty., Phelps County, Rolla, for plaintiff-appellant.

Lee H. Bushie, Dietzmann & Bushie, Rolla, for defendant-respondent.

PREWITT, Judge.

The state appeals the trial court's sustaining of defendant's motion to suppress. The issue presented to the trial court was whether there was probable cause to search a vehicle defendant was operating. By their briefs, the parties agree on the facts relevant to this issue. Quoting, they are:

On February 13, 1993, at approximately 8:27 a.m. [Missouri State Highway Patrolman] Martin was traveling eastbound on I–44 in Phelps County when he noticed a silver Ford Crown Victoria traveling eastbound which changed lanes without signaling. Tpr. Martin stopped the vehicle and found the driver to be the Respondent, of Phoenix, Arizona. Respondent stated he was traveling to Brooklyn, New York, to visit his father. As Respondent handed Tpr. Martin the rental agreement on the Ford, Tpr. Martin noticed a hand-held citizen's band radio lying on the front seat. The Ford was equipped with a car telephone, and a radar detector was clipped on

the driver's side sun visor. Tpr. Martin then asked Respondent how long he intended to stay in Brooklyn, and Respondent said "about a week or until his money ran out." Tpr. Martin then asked Respondent if the gym bag in the back seat was all the clothes he brought for the trip, to which Respondent replied the bag in the back seat was all he brought.

As Tpr. Martin walked back to his patrol car, he noticed a red steering wheel restraint, commonly known as "The Club", lying on the passenger seat floorboard. Martin then informed Respondent the reason he had stopped him was for changing lanes without signaling. Respondent indicated he had just spent the night in Springfield, Missouri, and was "a little tired". Martin then asked Respondent for his consent to search the Ford. He indicated he did so at approximately 8:35, some eight minutes after the initial stop.

Martin indicated he asked Respondent to search the vehicle due to the following observations:

1. That I-44 is a commonly known drug trafficking route and Respondent was traveling from a city that is known to supply drugs (Phoenix, Arizona) to a city that is known to smuggle in drugs (Brooklyn, New York);

2. There was a car telephone, handheld citizen's band radio, a radar detector (all commonly used by persons trafficking drugs) in the vehicle;

3. Respondent was using "The Club" to protect the car even though it is a rental (which are commonly used by drug traffickers);

4. Tire chains were in the back seat instead of in the trunk; and

5. Respondent stated he only had a small amount of clothing for a trip that was supposed to last at least a week.

Respondent stated he did not want Tpr. Martin to search his car. When Tpr. Martin asked why, Respondent stated that he had personal items in the trunk. Martin then asked Respondent what kind of personal items were in the trunk, and Respondent said he had "some clothing in the trunk of the vehicle". Tpr. Martin noticed that statement was in direct contradiction to Respondent's earlier statement that all the clothes he brought with him were in the bag in the back seat.

At 8:38 a.m., approximately eleven minutes after the initial stop, Tpr. Martin requested the Highway Patrol to send a drug sniffing dog to check the vehicle. Tpr. Martin then asked Respondent when he started his trip from Phoenix, and Respondent stated he left three days earlier. Tpr. Martin noted the rental agreement in the vehicle indicated it had been rented ten days previously. Martin also noted the car had been rented for a full month. Respondent also indicated he had stayed the night before in Springfield, Missouri, and the previous night in Oklahoma.

At approximately 9:15 a.m., some forty eight minutes after the initial stop, the drug sniffing dog arrived at the scene and indicated the presence of narcotics. Tpr. Martin seized, based on the dog's sniffing, three black suitcases and two silver gym bags which contained a substance believed by Tpr. Martin to be marijuana.

■ Review of the trial court's ruling on a motion to suppress is limited to determining if the evidence is sufficient to sustain the trial court's finding. *State v. Cook*, 854 S.W.2d 579, 581 (Mo.App.1993). This court defers to the trial court in assessing the credibility of witnesses and weighing the evidence. *Id.* In reviewing an order of the trial court suppressing evidence, the facts and reasonable inferences arising therefrom are to be considered favorably to the order and contrary evidence and inferences disregarded. *State v. Craig*, 759 S.W.2d 377, 379 (Mo.App.1988).

■ The state has the burden to prove by a preponderance of the evidence that a motion to suppress should be overruled. *State v. Schieber*, 760 S.W.2d 557, 558 (Mo.App.1988). See also § 542.296.6, RSMo 1986 ("[t]he burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled"). The weight of the evidence and credibility of witnesses are questions for the trial court's resolution. *State v. Boggs*, 634 S.W.2d 447, 453 (Mo. banc 1982).

There is a general principle that searches conducted without a search warrant are unreasonable, subject to a few established and well-delineated exceptions. *State v. Quinn*, 565 S.W.2d 665, 670 (Mo.App.1978). One of these exceptions is the search of a motor vehicle where there is "probable cause" to believe that it contains a substance which offends against the law. *Id.* at 671.

"Probable cause" in this context means more than mere suspicion, but exists where there are facts and circumstances within the knowledge of the seizing officers, and of which they have reasonably trustworthy information, which are sufficient to warrant one of reasonable caution to have the belief that an offense has been or is being committed or that the contents of the automobile offend against the law. *State v. Hornbeck*, 492 S.W.2d 802, 805 (Mo.1973). *See also Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890 (1949).

The state asserts that the highway patrolman had probable cause to believe that the vehicle contained a substance in violation of law at the time he requested a "drug sniffing dog". The dog arrived approximately 48 minutes after the initial stop and about 37 minutes after the trooper requested the dog. There is no contention that the dog's reaction should be considered in determining if probable cause existed. On the accuracy of such dogs, *see U.S. v. Ludwig*, 10 F.3d 1523, (10th Cir.1993). We therefore consider whether probable cause existed from the factors existing at the time the trooper called for the dog.

In contending there was probable cause to justify the search, the state relies primarily upon *State v. Burkhardt*, 795 S.W.2d 399 (Mo. banc 1990). The state asserts that this "case is a mirror image in all relevant respects" to *Burkhardt*. We do not agree. There were statements in *Burkhardt* which appeared to admit there were illegal substances in the vehicle. The highway patrolman was told, "You might as well go ahead and search it yourself. I'm not going to tell you where it's at." This, the court said, made it "obvious" that prior to the search there was probable cause. 795 S.W.2d at 406.

Here, the factors the state urges create no more than suspicion and each can be easily explained. Defendant lived in Arizona and was going to see his father in New York. Such a trip may not take much clothing as one may still have clothing in their parents' home. Reference to "some clothing" in the trunk is not necessarily inconsistent with defendant's prior statements regarding clothing as he did not say it was his clothing in the trunk. Car telephones, citizen's band radios and radar detectors are not unusual. Protecting the car by a "Club" might be a good idea even if it is a rental vehicle. Tire chains in the back seat may only indicate they were recently purchased or used in a month where snow is possible. The state contends that taken together these factors rise to probable cause but we do not believe that under these circumstances a reasonable person would feel it was probable that defendant was engaged in illegal activity.

It was for the trial court to weigh the evidence and assess the credibility of the witnesses. Under this court's limited review we cannot say that the trial court's determination was error.

The order is affirmed.

CROW and GARRISON, JJ., concur.