**STATE of Missouri, Petitioner–Appellant,**

v.

**Delza D. SMITH, Respondent–Respondent.**

**No. 20767.**

Missouri Court of Appeals,
Southern District,
Division One.

June 28, 1996.

Patrick L. King, Pros. Atty., Mark J. Kriebs, Asst. Pros. Atty., Phelps County, Rolla, for appellant.

Lee H. Bushie, St. James, for respondent.

BARNEY, Judge.

This is an interlocutory appeal pursuant to § 547.200.3 [1] wherein the State of Missouri appeals from the order of the trial court granting the motion of Delza Smith (Defendant) to suppress evidence of a felony amount of marijuana recovered from his automobile.

The State contends on appeal that the motion to suppress was granted against the weight of the evidence in that there was sufficient evidence to prove that Defendant consented to the search. In the alternative, the State argues that the initial stop for a traffic violation raised an articulable reasonable suspicion from the totality of the circumstances to give the police probable cause to conduct a valid, constitutional search of Defendant's vehicle.

Defendant was stopped at 9:20 a.m. on February 7, 1995, by a Missouri Highway Patrolman for following too closely while traveling east on Interstate 44 in Phelps County, Missouri. Defendant accompanied the trooper back to the patrol car where the trooper began to issue a warning ticket for following too closely. During an ensuing conversation the Defendant indicated that he was moving to New York with everything he owned.

The trooper testified that he became suspicious Defendant was trafficking drugs. Defendant had just bought his vehicle within the past week and there were numerous food wrappers, maps and water jugs in the car. Additionally, Defendant stated that he was moving everything he owned to New York, yet he possessed only one suitcase and had mentioned that there were only tools in the trunk, eliminating the possibility that he was traveling with additional belongings. The trooper testified that Defendant became increasingly nervous as they spoke. He also stated at the hearing, "when I informed the

---

1. All statutory references are to RSMo 1994.

Defendant that I was going to search the vehicle, I asked him if there was anything illegal in the car, illegal guns, knives or drugs, and he broke eye contact with me on the ground, I believe at his feet, and said, 'No, not exactly.' " The trooper then issued the warning ticket and returned Defendant's license at that time or shortly thereafter. The trooper then requested permission to search the vehicle.

## I.

The central dispute at the hearing was whether or not Defendant actually gave his consent for the trooper to search the vehicle. The trooper testified that Defendant did consent after hesitating and stuttering, but the trooper could not remember the specific words he used. The trooper's preliminary report (prepared within the same working day) was sent to the prosecutor's office for the purpose of filing charges. The report stated that the Defendant "hesitated and stuttered" when the trooper asked for permission to search his car.[2] Defendant denied giving consent to search. At the suppression hearing he stated that he never gave a response. Instead his testimony was that he "hesitated" and "stood there" and that the trooper "said he was gonna search my car."

The trooper performed a quick search of the interior and the trunk lasting approximately three minutes. It was at this time that the trooper's suspicion of drug activity was heightened. He testified that the carpet in the trunk near the screw areas was torn and the carpet had been pulled away from the glue indicating a possible secret compartment.

At this time, the trooper informed Defendant that he believed narcotics were hidden in the vehicle and requested that Defendant accompany him to Troop I so that the search could continue. Defendant inquired as to the distance to Troop I as he was low on gasoline. He then responded "Okay, I guess." When they reached Troop I, a subsequent search took place. A drug sniffing dog de-

tected narcotics in the vehicle, the marijuana was recovered and Defendant was arrested.

■ The trial judge stated in his order that "the State has not carried its burden of proving a free and voluntary consent to search the trunk of Defendant's automobile as it sat beside Interstate Highway 44."

■ The State has the burden of showing by a preponderance of the evidence that a motion to suppress should be denied. § 542.296.6; *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992); *State v. Looney,* 911 S.W.2d 642, 644 (Mo.App.1995); *State v. Perrone,* 872 S.W.2d 519, 521 (Mo.App.1994). Appellate review of a motion to suppress is limited to a determination of sufficiency of the evidence to sustain the trial court's finding. *State v. Wise,* 879 S.W.2d 494, 503 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995); *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990); *State v. Cook,* 854 S.W.2d 579, 581 (Mo.App.1993). We are to reverse the trial court's ruling only if that ruling is clearly erroneous. *State v. Talbert,* 873 S.W.2d 321, 323 (Mo.App.1994). "If the trial court's ruling 'is plausible in light of the record viewed in its entirety' this court 'may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.' " *Looney,* 911 S.W.2d at 644; *Cook,* 854 S.W.2d at 581. Additionally, it is well established that we "defer to the trial court's vantage point in assessing the credibility of the witnesses and weighing the evidence." *Id.; see also Burkhardt,* 795 S.W.2d at 404. The trial judge found Defendant did not give consent to search in this case and we cannot say that in viewing the evidence, the ruling was clearly erroneous.

■ There is no question that the trooper's initial stop of Defendant for following too closely was proper. An officer who witnesses a traffic violation clearly possesses the authority to stop the vehicle for the purpose of issuing a traffic summons. *State v. Reyn-*

**2.** The transcript reveals that a full report was filed by the trooper at a later time. However, we do not have this report before us and it was never introduced as an exhibit by the State. The

trooper did not testify at the hearing as to whether the final report contained any further information regarding Defendant's initial consent.

*olds,* 753 S.W.2d 1, 2 (Mo.App.1988); *see also State v. Childress,* 828 S.W.2d 935, 943 (Mo. App.1992).

 As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights. *Looney,* 911 S.W.2d at 644; *State v. Morr,* 811 S.W.2d 794, 797 (Mo.App.1991). However, a consensual search conducted without a search warrant does not violate the Fourth Amendment even though the search is not otherwise supported by probable cause or a reasonable suspicion of criminal activity. The consent, in essence, waives the defendant's Fourth Amendment rights. *Cook,* 854 S.W.2d at 582.

 To be valid, the consent must be freely and voluntarily given by a person with authority to consent, and the search or seizure must not exceed the scope of the consent given. *State v. Hyland,* 840 S.W.2d 219, 221 (Mo. banc 1992). Whether the consent is in fact voluntary is determined by looking at the totality of the circumstances and is an issue upon which the State bears the burden of proof. *State v. Riddle,* 843 S.W.2d 385, 387 (Mo.App.1992); *Talbert,* 873 S.W.2d at 324. The State does not satisfy its burden of showing that the consent was voluntary by merely showing a submission to a claim of lawful authority. *Id.*

The only evidence presented by the State relating to the consent of the first search was the trooper's testimony and preliminary report. Nowhere in the preliminary report did it recite that Defendant actually consented to the search of his vehicle. Instead, the report stated that Defendant "hesitated and stuttered" when asked for permission to search the car. Additionally, the final report that the trooper indicated was later filed was not introduced into evidence nor was there any mention in the transcript of what the final report stated with respect to whether or not consent was given by the Defendant to conduct the first search.

The determination of whether a valid consent was given to search the vehicle essentially boiled down to whether the trial court believed the trooper's or Defendant's recollection of events. "The determination of the credibility of the officer was for the trial court." *State v. Mantle,* 779 S.W.2d 357, 360 (Mo.App.1989); *see also State v. Villa–Perez,* 835 S.W.2d 897, 902 (Mo. banc 1992). Under these facts we cannot say that its determination was unreasonable. We cannot conclude that the trial court erred in holding that the state did not meet its burden. We affirm the trial court's finding that consent to search the vehicle was not freely and voluntarily given.

II.

 The State alternatively contends that even if consent was not given by the Defendant for the road side search, that probable cause for the search of the vehicle existed and inevitably the drugs would have been found. We disagree.

 One of the exceptions to the warrant requirement of the Fourth Amendment is the automobile exception. *State v. Petrone,* 836 S.W.2d 484, 487 (Mo.App.1992). "An automobile search may be conducted on probable cause to believe that contraband is concealed within, a belief springing from circumstances which would justify issuance of a warrant." *Childress,* 828 S.W.2d at 943. The lawfulness of the entry and existence of probable cause must be measured at the time of entry into the automobile. " '[I]n determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry* .... [A] search is not to be made legal by what it turns up. In law it is good *or* bad when it starts and does not change character from what is dug up subsequently.' " *Id.* at 944.

 Probable cause means more than mere suspicion. *Perrone,* 872 S.W.2d at 522. It "exists where there are facts and circumstances within the knowledge of the seizing officers ... which are sufficient to warrant one of reasonable caution to have the belief that an offense has been or is being committed or that the contents of the automobile offend against the law." *Id.*

 The trooper testified that he became suspicious of Defendant because of various factors. Specifically, he stated that "there

was a suitcase in the backseat, also numerous food wrappers on the floorboard with a water jug, and I believe there was just a map also." He testified that Defendant seemed to grow increasingly nervous. The trooper also found it strange that Defendant indicated he was moving all that he owned to New York yet he was carrying only one suitcase. Finally, the trooper stated that when he "informed the Defendant that [he] was going to search the vehicle" and asked him if there was any illegal guns, knives or drugs in the car, the Defendant replied, "No. Not exactly." Other than these factors, there is nothing else in the record to indicate why the trooper became suspicious of Defendant. On these facts alone we cannot say that probable cause existed to conduct the first search of the vehicle. Without a valid first search, then any subsequent search of the automobile and evidence seized therefrom would be considered "fruits of the poisonous tree." *See State v. Kovach,* 839 S.W.2d 303, 313 (Mo.App.1992).

The State relies on *Burkhardt, supra,* in support of its proposition that probable cause existed to search Defendant's vehicle. However, *Burkhardt* contained many more factors giving rise to probable cause. The defendant in *Burkhardt,* a resident of the West coast, was stopped on Interstate 44 for speeding. She and a companion, a resident of the East coast, were en route from California to Ohio in a rental car. When they were questioned individually, their stories were in conflict with regard to how they were acquainted, their respective occupations and their final destination. Additionally, they were fidgety and nervous and when confronted with the fact that their stories were conflicting, the defendant's nervousness became noticeably heightened.

When the defendant was asked for permission to search the vehicle she wanted to know if she must allow the troopers to search. She was informed that she did not and then consented to a search of all but the luggage stating that she did not want her lingerie strewn about the highway. The trooper assured her he had no intention of doing that and if she would tell him where the contraband was, there would be no need to go through the luggage. The defendant responded that she did not know if she should tell him. The trooper informed her he believed they had probable cause to search even without her consent to which she replied, "You might as well go ahead and search it yourself. I'm not going to tell you where *it's at.*"

The facts in *Burkhardt* gave rise to a reasonable suspicion that the vehicle contained contraband. In the present situation we have some empty food wrappers, a water jug, a map, and less luggage than may be customary for someone moving to another state. These are certainly items that could well be found in any traveler's car. We defer to the trial court's vantage point in weighing the evidence and assessing the credibility of the witnesses. *Cook,* 854 S.W.2d at 581.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and GARRISON, J., concur.