**STATE of Missouri, Respondent,**

v.

**Warren J. SLAVIN, Appellant.**

No. WD 50624.

Missouri Court of Appeals, Western District.

April 29, 1997.

---

Danieal H. Miller, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and HANNA and LAURA DENVIR STITH, JJ.

PER CURIAM.

Warren Slavin appeals from his conviction of possession of a controlled substance with intent to deliver in violation of § 195.211, RSMo 1994. As a result of his conviction, Mr. Slavin was sentenced to eight years imprisonment. Mr. Slavin raises two points on appeal. First, he contends that the trial court erred in denying his motion to suppress the marijuana seized from his car because that evidence was discovered during a search based on probable cause obtained at a time

when he was being illegally detained. Mr. Slavin also appeals from the motion court's denial, after an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief. Mr. Slavin contends that the motion court erred in its denial because the trial court sentenced him to a longer prison term to punish him for requesting a trial by jury.

The judgment of conviction is reversed. As a result, Mr. Slavin's appeal from the denial of his post-conviction motion is moot.

■ On review, this court views the evidence and reasonable inferences therefrom in the light most favorable to the verdict. *State v. McNaughton,* 924 S.W.2d 517, 521 (Mo. App.1996). On the afternoon of November 10, 1993, Trooper Marty Chitwood of the Missouri Highway Patrol observed Mr. Slavin's vehicle traveling on Interstate 70. Trooper Chitwood followed Mr. Slavin's car for about a quarter of a mile, using his speedometer to pace Mr. Slavin's vehicle at 71 miles per hour. Because the legal speed limit on that portion of Interstate 70 was 65 miles per hour, and because Mr. Slavin was driving in the passing lane while not passing, Trooper Chitwood activated his lights and pulled the vehicle over to the side of the interstate.

Trooper Chitwood called in the stop at 1:50 p.m., and then approached Mr. Slavin's car. He observed luggage and several fishing poles in the back seat of the car. Upon request, Mr. Slavin provided Trooper Chitwood with his driver's license and vehicle registration. According to normal procedure, Trooper Chitwood escorted Mr. Slavin back to his patrol car. He advised Mr. Slavin that he had been stopped for speeding and driving in the passing lane while not passing. While Trooper Chitwood ran the computerized information check, he engaged Mr. Slavin in conversation about where he was going. Mr. Slavin informed Trooper Chitwood that he was traveling from Colorado to New York to take his sick parents to Florida. Trooper Chitwood asked him about the ownership of the car, a maroon Ford Taurus. Mr. Slavin told him that the car was his. He also told Trooper Chitwood that he had not worked full time in two years, implying that he had worked part-time during that period.

After he completed the computer check, which revealed no irregularities, Trooper Chitwood informed Mr. Slavin that he would receive only a warning. At that point the traffic stop ended. Nonetheless, Trooper Chitwood then asked Mr. Slavin for consent to search his vehicle. Mr. Slavin asked what he was looking for and Trooper Chitwood told him "[a]nything illegal." Mr. Slavin responded that his brother, an attorney, had advised him that he should never consent to a search of his vehicle unless there was a reason for it. Because of the officer's interpretation of Mr. Slavin's expressed apprehension concerning the search, Trooper Chitwood did not search the car, but called for a canine unit. This occurred at 1:58 p.m., eight minutes after the stop began. He then read Mr. Slavin his *Miranda* rights.[1] After he was informed that the drug dog was on its way, Trooper Chitwood offered to take Mr. Slavin to a nearby truckstop until the dog unit arrived, but Mr. Slavin declined.

At 2:50 p.m., the canine dog unit arrived. When asked by the dog's trooper handler why he had called for the dog, Trooper Chitwood responded that Mr. Slavin had answered all his questions and had been very cooperative until he was asked to give permission to search, but then he declined to consent to search. Trooper Chitwood advised the officer in control of the dog that this was a "non-consent search" which meant that they could not enter the car. The dog circled the car once without result, but Trooper Chitwood asked to have him circle the car again. This time the dog pawed on the trunk, indicating the presence of drugs. Because the dog alerted to drugs, Trooper Chitwood placed Mr. Slavin under arrest and began searching the trunk of the car. Inside a piece of luggage in the trunk, Trooper Chitwood found a sleeping bag containing several wrapped packages of marijuana. He also found several packages of marijuana in a black travel bag. The total amount of the marijuana discovered in the trunk of Mr. Slavin's car was between 80 and 100 pounds.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Mr. Slavin was arrested and charged with possession of a controlled substance with intent to deliver. He pleaded not guilty. Prior to trial, Mr. Slavin filed a motion to suppress the marijuana because he claimed it was illegally seized. His motion was overruled, and the evidence allowed at trial. He was found guilty by a jury, and sentenced to eight years in prison. Mr. Slavin filed a timely Rule 29.15 post-conviction motion, which the motion court denied after an evidentiary hearing. Mr. Slavin appeals both his conviction and the denial of his Rule 29.15 motion.

Mr. Slavin claims as his first point on appeal that the trial court erred in denying his motion to suppress the marijuana found in the trunk of his vehicle. He contends that the State failed to prove that Trooper Chitwood had a reasonable suspicion based on specific, articulable facts that criminal activity was occurring before the time required for the traffic stop elapsed.

■ Review of the trial court's ruling on a motion to suppress evidence is limited to a determination of whether there is sufficient evidence to support the court's ruling based on the complete record before the trial court. *State v. Preston,* 861 S.W.2d 627, 630 (Mo. App.1993). The trial court's ruling on a motion to suppress is reversed only if it is clearly erroneous. *State v. Stevens,* 845 S.W.2d 124, 128 (Mo.App.1993). The facts are viewed in a light most favorable to the trial court's ruling. *McNaughton,* 924 S.W.2d at 523. Although we review the facts under a clearly erroneous standard, the issue of whether the Fourth Amendment has been violated is a legal question we review *de novo. United States v. Green,* 52 F.3d 194, 197 (8th Cir.1995); *United States v. Hogan,* 25 F.3d 690, 692 (8th Cir.1994).

"Once a motion to suppress has been filed, the state bears the burden of going forward with the evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion should be overruled." § 542.296.6; *Stevens,* 845 S.W.2d at 128. Mr. Slavin, in his motion to suppress, alleged that the marijuana discovered in his car was tainted and must be excluded because he was "detained well beyond the time reasonably

necessary for the officer to conclude the traffic stop," and there was no reasonable and articulable suspicion of criminal activity to support the continuation of the stop beyond the issuance of the warning. Therefore, according to Mr. Slavin, the fruits of the search, the marijuana, were illegally obtained and should have been suppressed under the exclusionary rule.

The Fourth Amendment of the United States Constitution preserves the right of the people to be secure from unreasonable searches and seizures. *State v. Franklin,* 841 S.W.2d 639, 641 (Mo. banc 1992). The Fourth Amendment is not violated, however, when a law enforcement officer briefly stops or detains an individual or a moving vehicle to investigate whether the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal activity is afoot. *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 617 (1975); *Franklin,* 841 S.W.2d at 641. It is this principle that we apply to determine the merits of Mr. Slavin's claim that his Fourth Amendment rights were violated.

■ Mr. Slavin was initially stopped for traffic violations and the validity of the initial stop is not at issue. A police officer is authorized to stop a vehicle observed violating the traffic laws of the state. *See State v. Smith,* 926 S.W.2d 689, 692 (Mo.App.1996). Trooper Chitwood testified that he observed Mr. Slavin speeding and driving in the passing lane without passing. Trooper Chitwood had probable cause to stop Mr. Slavin for violating the traffic laws of Missouri, so the initial stop was valid. *Id.* "[S]o long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] arrest is constitutional." *State v. Malaney,* 871 S.W.2d 634, 637 (Mo.App.1994) (quoting *United States v. Trigg,* 878 F.2d 1037, 1041 (7th Cir.1989)).

■ Regardless of its initial validity, "[a] vehicle stop to issue a written traffic warning for speeding is a seizure within the meaning of the Fourth and Fourteenth Amendments." *Stevens,* 845 S.W.2d at 128. "If the detention extends beyond the time reasonably necessary to effect its initial purpose, the seizure

may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure." *Id.* Reasonable suspicion must be based upon a specific, articulable set of facts indicating that criminal activity is afoot. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1584, 104 L.Ed.2d 1, 10 (1989). The law enforcement authorities must be able to articulate more than just an "inchoate and unparticularized suspicion or 'hunch.'" *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968)). Furthermore, the assessment of the officer's actions, in light of the facts and circumstances confronting the officer at the time, must be objective, and not based upon the officer's actual state of mind at the time the challenged action was taken. *State v. Donohoe,* 770 S.W.2d 252, 256 (Mo.App.1989).

■ The period of lawful seizure for a traffic stop encompasses that time during which the officer may conduct a reasonable investigation of the traffic violation. Such an investigation may include "asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." *McNaughton,* 924 S.W.2d at 523; *U.S. v. Ramos,* 42 F.3d 1160, 1163 (8th Cir. 1994). Once the officer has completed these steps, the detainee must be allowed to proceed unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity. *State v. Logan,* 914 S.W.2d 806, 808 (Mo.App. 1995).

As applied to the facts of this case, the period of lawful seizure was limited to the eight minutes from 1:50 to 1:58 p.m. required for Trooper Chitwood to process the warning given to Mr. Slavin. Therefore, only the information that was available to Trooper Chitwood during this period is relevant to our determination of whether specific, articulable facts supported a reasonable suspicion of criminal activity.

As the State acknowledged in oral argument, no Missouri case has found reasonable suspicion to exist on such meager and seemingly innocent facts as those presented here. It notes, however, that the reasonableness of

a law enforcement officer's suspicion is determined upon consideration of the totality of the circumstances surrounding the stop. *Stevens,* 845 S.W.2d at 129. Under this totality of the circumstances test, the fact that each factor relied on by the officer is innocent in itself does not preclude a finding of reasonable suspicion if, when taken together, the facts are adequate to create reasonable suspicion of criminal activity. *Id.; Sokolow,* 490 U.S. at 9–10, 109 S.Ct. at 1586–87, 104 L.Ed.2d at 11–12. "[T]he relevant inquiry is not whether the particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Sokolow,* 490 U.S. at 10, 109 S.Ct. at 1587, 104 L.Ed.2d at 12 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).

Even when considered as a whole, however, for the reasons set out below, the facts are not adequate to create a reasonable suspicion that Mr. Slavin was engaged in criminal activity. Therefore, the resulting detention and search of Mr. Slavin's vehicle were unconstitutional and the fruits of that search must be suppressed.

■ In determining the totality of the circumstances, we consider the record of the pretrial hearing on the motion to suppress, where the preliminary hearing and deposition testimony was admitted in evidence, and the trial testimony up to the point when the challenged testimony was offered. *State v. Blackman,* 875 S.W.2d 122, 135 (Mo.App. 1994). In focusing on Trooper Chitwood's observations of the circumstances surrounding his stop of Mr. Slavin, we note that the reasons given by Trooper Chitwood as a basis for his reasonable suspicion are contradictory and change over time. We also note that, while his testimony concentrated on Mr. Slavin's conduct after he asked Mr. Slavin for permission to search the vehicle, such conduct is not relevant to Trooper Chitwood's determination to hold Mr. Slavin further.

■ Trooper Chitwood first articulated the basis for his suspicion of contraband when he told the Boone County canine unit officer who responded to his radio call, that he called him once Mr. Slavin declined con-

sent to search, even though he had been very cooperative until he was asked to allow a search. In his deposition, he went so far as to state that he believed that, in most cases, if a person won't consent to a search, then the person is doing something wrong.

 "Presumably, an officer may at any time ask a citizen if he has contraband on his person, or in his car, or in his residence, and may ask his permission to search." *State v. Morr*, 811 S.W.2d 794, 798 (Mo.App.1991). But, a refusal to consent to a search may not be used as support for the requisite reasonable suspicion to support the search. *State v. Joyce*, 885 S.W.2d 751, 755 (Mo.App.1994). *See also U.S. v. White*, 890 F.2d 1413, 1417 n. 4 (8th Cir.1989); *United States v. Wilson*, 953 F.2d 116, 126 (4th Cir.1991). Otherwise, police officers could manufacture reasonable suspicion in virtually every case merely by asking permission to search. Obviously, if the suspect consented to the search, the resulting search would be legal. If the suspect did not consent, however, the resulting search could still be legal simply because the refusal would constitute reasonable suspicion. The authorities may not have it both ways. Officer Chitwood had no right to presume wrongful activity from a refusal to permit a search. Without this limitation, the police would have virtually unfettered discretion, contrary to the purpose and intent of the Fourth Amendment. *See* Rachel K. Laser, Unreasonable Suspicion: Relying on Refusals to Support *Terry* Stops, 62 U. Chi. L.Rev. 1161, 1162 (1995). For these reasons, we find Mr. Slavin's decision to decline the search irrelevant.

 At the preliminary hearing and in his deposition and at trial, Trooper Chitwood indicated additional factors on which he also based his suspicion that Mr. Slavin was engaged in criminal activity. Most important among these factors was Mr. Slavin's nervousness. In addition, at one point or another—the reasons given by the trooper for the stop changed—he mentioned the facts that Mr. Slavin's luggage and fishing poles were in the back seat rather than the trunk; Mr. Slavin had his car title and so may have paid cash for his car although he had not worked full-time in two years; Mr. Slavin became apprehensive when asked to consent to a search of his car and he refused to consent; Mr. Slavin was carrying pepper gas in the trunk of his vehicle; and Mr. Slavin was traveling across country from west to east.

We turn first to the key factor cited by the trooper, Mr. Slavin's nervousness. At the preliminary hearing, however, Trooper Slavin clearly testified that Mr. Slavin started out about as nervous as the average person Trooper Chitwood arrests in a traffic stop situation. He described it as a "pretty routine traffic stop." It was when Trooper Chitwood asked to search the car, however, that Mr. Slavin became a little bit more nervous. He said Mr. Slavin got quite a bit more nervous when he was told that the dog was coming to search and thereafter.

By the time that Trooper Chitwood's deposition was taken, however, Trooper Chitwood's testimony had changed. At that time, he claimed that Mr. Slavin had become unusually nervous once he was asked if the trooper could search the car. By trial, Trooper Chitwood testified, contrary to his earlier statements, that Mr. Slavin was very nervous, wringing his hands, and breaking out into a major sweat, even during the initial traffic stop, that his demeanor did not change when he learned he would only get a warning, and that he got more nervous as the stop progressed. In other words, Trooper Chitwood's recall of the progression of Mr. Slavin's nervousness became progressively more inculpatory over time, a fact which could not have been lost on the trial judge and is not lost on us.[2] Nonetheless, we take the evidence in the light most favorable to the trial court's decision denying the motion to suppress. Even considered in this light, however, it is evident, at a minimum, that

---

**2.** While Trooper Chitwood suggested he had not seen such nervousness at a traffic stop before, we note that in *State v. Logan*, 914 S.W.2d 806, 809 (Mo.App.1995), he similarly testified that he based his reasonable suspicion on the fact that the defendant was very nervous and kept wringing his hands and moving around. *Cf. State v. Pena*, 784 S.W.2d 883 (Mo.App.1990) (defendant sought but was denied permission to show that Trooper Chitwood made an unusual number of traffic stops of persons with out-of-state plates).

Mr. Slavin became more nervous after the traffic stop was concluded and once the trooper indicated that in that event he would call for the dog. Any such nervousness at that point is irrelevant. A determination as to whether Trooper Chitwood had an adequate basis for a reasonable suspicion of criminal activity must be made as of the time he completed the traffic stop, and not in light of later conduct. *Stevens,* 845 S.W.2d at 129.

In any event, whatever degree of nervousness Mr. Slavin showed during the traffic stop, it is well-settled that "[n]ervousness alone does not constitute reasonable grounds for suspicion," *U.S. v. Miller,* 20 F.3d 926, 930 (8th Cir.1994), although it can be a factor which, together with others, may be relevant in determining reasonable suspicion under the totality of the circumstances test. *Stevens,* 845 S.W.2d at 129; *Florida v. Royer,* 460 U.S. 491, 493 n. 2, 103 S.Ct. 1319, 1321 n. 2, 75 L.Ed.2d 229, 233 n. 2 (1983). Here, while nervousness is not the solitary circumstance, it is the only important one in that, as set forth below, the other factors are so insignificant that they do not make a meaningful contribution to a suspicion of guilt.

Trooper Chitwood testified that he was suspicious because he believed it was unusual to have fishing poles in the back seat when traveling across the country, and that might indicate that there were drugs in the trunk. The issue is not whether Trooper Chitwood had a "hunch" based on seeing the fishing poles in the back seat, however, but whether it is objectively reasonable to conclude from the presence of fishing poles or luggage on the back seat that drugs could be in the trunk. Considered alone or in combination with other factors, the presence of Mr. Slavin's fishing pole and luggage in the back seat was not relevant to the reasonable suspicion inquiry. It is common knowledge that many travelers will place some or all luggage in the back seat. Indeed, other cases have found the *lack* of visible luggage to be suspicious. *See, e.g. United States v. Tapia,* 912 F.2d 1367, 1371 (11th Cir.1990). *See also United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (Marshall, J., dissenting) (noting how explanation for suspicion conforms to facts of case and is often contradictory between cases, by citing cases where suspicion was justified by getting off plane first, last, or in the middle, by one-way ticket or round-trip ticket, by traveling alone or traveling with someone, and by being nervous or being too calm). Therefore, this fact, considered with all the other factors, is of little or no value in determining whether reasonable suspicion existed.

The State also relies on the purported fact that Mr. Slavin had paid cash for his car while working less than full time. A review of the record creates the impression that Mr. Slavin did not literally pay for his car with cash. Instead, it appears that he had the title of his car with him, so he owned his car outright with no lien. Since there is no evidence as to the purchase price of Slavin's Ford Taurus, it is a quantum leap that owning an automobile free of lien translates into a suspicion that the owner possesses large amounts of cash. Nevertheless, even if we take the trooper's testimony literally, that Mr. Slavin used cash to buy his car, there is no evidence in the record indicating the value of the car when purchased. The fact that Mr. Slavin paid an unknown amount of cash for his car at an unknown time, without more, is not significant to our analysis. *See Stevens,* 845 S.W.2d at 129.

In addition, the State argues that Trooper Chitwood had a reasonable suspicion based on the fact that Mr. Slavin had pepper gas, a weapon, and "weapons are generally associated with the drug trade." This factor, even if relevant, became evident only after the officer asked for permission to search the vehicle and had been denied permission. Therefore, this factor does not contribute to the creation of reasonable suspicion.

Finally, there is the fact that Mr. Slavin was traveling west to east on Interstate 70. There is nothing inherently suspect about traveling west to east on Interstate 70. Missouri courts have not taken judicial notice of any notorious drug activity on that route, as they have on Interstate 44. *See Joyce,* 885 S.W.2d at 752 (court took judicial notice of the fact that Interstate 44 is a notorious route for drug traffickers). As traveling west to east on Interstate 70 would include "a very large category of presumably innocent travelers," this court does not consider

it important in the reasonable suspicion analysis. *Reid v. Georgia,* 448 U.S. 438, 439, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890, 894 (1980). Otherwise, virtually random seizures of innocent travelers would be perfectly justified and condoned.

Here, considering the totality of the circumstances, the degree of suspicion attached to the particular acts and circumstances surrounding the stop of Mr. Slavin's car was insufficient to create an objective reasonable suspicion that criminal activity was occurring. Mr. Slavin was extremely nervous. This fact, along with the additional facts that Mr. Slavin had fishing poles and luggage on the back seat and pepper gas in the trunk, may have previously paid cash for his vehicle at some unknown time, and was traveling west to east on Interstate 70, did not justify any meaningful degree of suspicion of criminal activity.

For these reasons, we hold that the trial court clearly erred in overruling Mr. Slavin's motion to suppress the evidence because it was the result of an unconstitutional seizure. This case, if it upheld the detention and search, would create a much more permissive standard for "reasonable suspicion." Virtually any person traveling from west to east who was unusually nervous after being stopped could be subjected to an extended detention until a law enforcement officer's "hunch" was investigated. Innocent factors, such as those identified here, can always be found to support a detention when the nervous traveler refuses to consent to a search.

Although there is an inclination to avoid reversing convictions on 'procedural' grounds, particularly where the trooper's hunch bore fruit, this court regards the protection of the Fourth Amendment as more than a mere technicality. It must be remembered that "[t]he issue of the guilt of the defendant ... is irrelevant to the determination of whether the evidence sought to be suppressed is admissible at the trial of the criminal charge." *Donohoe,* 770 S.W.2d at 257. The Fourth Amendment is the vehicle by which all citizens' rights are protected. As the Missouri Supreme Court has stated:

[T]he prosecution's burden of proof at a suppression hearing is not a technicality; it plays a powerful and integral role in the effort to ensure the effectiveness of the Constitution's Fourth Amendment prohibition against unreasonable searches and seizures. The protection of the citizens' Fourth Amendment rights supersedes any benefit derived from bending the law to secure a single conviction.

*State v. Miller,* 894 S.W.2d 649, 657 (Mo. banc 1995).

Here, the State failed to meet its burden of persuasion that Mr. Slavin's motion to suppress should be overruled. As a matter of law, there was insufficient evidence that Trooper Chitwood had an objectively reasonable suspicion of criminal activity based on specific, articulable facts to justify the detention or search and seizure.[3]

Because the trial court clearly erred in overruling Mr. Slavin's motion to suppress the evidence, we need not consider Mr. Slavin's claim of error concerning his Rule 29.15 motion since it is moot. *State v. Weems,* 840 S.W.2d 222, 229 (Mo. banc 1992). The trial court's judgment of conviction is reversed.

3. Because of our resolution of this issue, we do not reach the issue of the reasonableness of the delay of over one hour between the time Trooper Chitwood stopped Mr. Slavin and the time he was arrested.